UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                          Case No. 3:26-mj-97/HTC

GABRIEL GARCIA HERNANDEZ

    Defendant.

_____/

## ORDER OF DETENTION

Defendant has been indicted on one count of illegal reentry into the United States after being deported or removed in violation of 8 U.S.C. § 1326(a). At Defendant's initial appearance, the Government moved for detention under 18 U.S.C. § 3142(f)(2) of the Bail Reform Act ("BRA"), based on a risk of flight and non-appearance. The Court held a detention hearing on April 10, 2024, and April 13, 2024. For the reasons set forth below, the Court finds Defendant shall be detained under the BRA.

### I.    Risk of Flight

Under the BRA, when the Government moves for detention based on risk of flight, it is the Government's burden to prove by a preponderance of the evidence that, if released, there is a serious risk Defendant will leave the jurisdiction to avoid prosecution or will not show up for his court appearances. Once the Government meets its burden of showing it is more likely than not there is a serious risk

Defendant will flee, the Court must then consider the factors set forth in § 3142(g) to determine whether there are any conditions or combination of conditions the Court may impose that will reasonably assure the Court Defendant will be neither a serious risk of flight or a danger to the community.

Here, the Government argues Defendant is a serious risk of flight because he is in the United States illegally, has been deported on at least 1 prior occasion, faces a maximum sentence of 10 years of incarceration because of two prior felonies, has no ties to this District, and has the financial ability to avoid prosecution.

Given Defendant's prior deportation, the potential penalties he is facing with because of the prior felony charge, Defendant's prior criminal history, and Defendant's financial support, the Court finds the Government has established by a preponderance of the evidence Defendant is a serious risk of flight.  The Court will therefore move to the second part of a detention analysis under the BRA, which is consideration of the § 3142(g) factors.

## II.    Bail Reform Act, § 3142(g) Factors

The BRA identifies the factors a court must consider when deciding whether to release or detain a defendant.  18 U.S.C. § 3142(g).  Those factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and "(4) the nature and seriousness

2

of the danger to any person or the community that would be posed by the [defendant]'s release." *Id*.

### A. Nature and circumstances of the offenses charged

First, the Court considers the nature and circumstances of the offense charged. When considering the nature and circumstances of the offense, the Act instructs a court to consider "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, Defendant is charged with illegal reentry, which does not fall into any of those categories.

That said, the nature of an illegal reentry charge necessarily includes some risk of flight because Defendant has some ties to another country and lacks the right to be in the United States. While Defendant's status as an illegal alien does not mean he is automatically subject to detention, it is a factor the Court considers in determining the risk of nonappearance or danger to the community. *See United States v. Santos-Flores*, 794 F.3d 1088, 1093 (9th Cir. 2015) ("alienage may be taken into account, but it is not dispositive").

### B. The weight of the evidence

Next, the Court considers the weight of the evidence. This factor concerns both the weight of the evidence of dangerousness, as well as the strength of the

3

Government's underlying case against the defendant. *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006). Here, based on the testimony of ICE[1] Officer Vu, and the probable cause affidavit supporting the complaint, the Court finds the weight of the evidence against Defendant to be strong, and thus, this factor weighs in favor of detention. The defense does not dispute the weight of the evidence is strong.

### C.    The history and characteristics of Defendant

The Court is also required to consider Defendant's history and characteristics, which include his criminal history, ties to the community,[2] employment history, and history of substance abuse, if any.

Defendant is 41 years old who was born in Mexico. He was identified by ICE as an illegal alien after he was arrested on April 1, 2026, in Okaloosa County, Florida. He has been in the United States since at least 2003, because that is when he was charged with giving a false name to law enforcement. He has no ties to the Northern District of Florida and was pulled over by the Florida Highway Patrol in Okaloosa County on his way to Louisiana, where he has family.

---

[1] "ICE" refers to the Department of Homeland Security, U.S. Immigration and Customs Enforcement.

[2] "Community ties" under the BRA may embrace the charging district as well as another community in the United States. *See Santos-Flores*, 794 F.3d at 1093.

He lives in the Middle District of Florida, with his wife of approximately 5 years, and four adult step-children. He has resided in the Middle District for approximately 25 years. He also has one biological child, who is 17 years old. She lives with her mother although he does provide her with financial support. She is also located in the Middle District. There is no indication that he or his wife owns any property in the Middle District. Each of his children wrote a letter in support of his release.

His wife owns a pallet business, and it is unclear whether he has performed any services for his wife's company. He has been employed, but no specific information was provided about his employment, other than a proffer that he worked for three years with a landscaping company and has worked in construction at other times.

In 2024, he was found in Texas and was deported. The defense explained that Defendant was in Texas vising his wife's family at the time, but the Government admitted documents from the Department of Homeland Security indicating that Defendant told law enforcement at the time of he was found that he had just crossed the border on a raft from Mexico. Regardless he was deported to Mexico in February 2024 and later returned to the United States.

Defense also proffered that Defendant is active in the community and in his church, but no additional information about those involvements was provided.

5

Additionally, Defendant has a sister in Louisiana and a brother in Alabama. He may also have siblings in Mexico.

Defendant's criminal history includes a 2003 adjudication for driving without a license, a 2004 adjudication for failing to appear for a misdemeanor driving charge, a 2013 adjudication for driving without a license, and two possession of cocaine and drug paraphernalia charges. The first possession charge was in 2014 and the second was a few months later, while Defendant was on probation, resulting in a violation of probation.

Also, although no charges were brought, an investigation was initiated in 2017 by the Plant City Police Department arising out of allegations brought against Defendant by one of Defendant's step-children, who was a minor at the time. Although the child's mother believed the child may have made up the allegations, she asked the Defendant to leave the residence and the child also moved to Texas to live with another family member.

Finally, according to the Government, Defendant is subject to an ICE detainer and therefore could be subject to detention by ICE or removal from the United States, even if released by the Court. Although "a deportable alien" is not categorically "barred from release," Defendant's likely removal upon release from custody is a factor to weigh in the flight analysis. *See United States v. Cobix-Espinoza*, 655 F.

6

Supp. 3d 584, 596 (E.D. Ky 2023) (citing *United States v. Adomako*, 150 F. Supp. 2d 1302, 1307 (M.D. Fla. 2001)).

Given the ICE detainer and the prior criminal history, the Court finds Defendant's history and characteristics weigh in favor of detention.

**D. Nature and seriousness of the danger posed by release.**

Finally, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release. Because Defendant is in the United States illegally, has two prior felony convictions for drug possession, and was recently deported, the Court finds Defendant poses a serious risk of danger if released.

**III.    Conclusion**

The Court recognizes that Defendant has some family ties to the Middle District of Florida and while his criminal history includes two felony drug convictions, the Court also recognizes those convictions are more than 10 years old. However, given that Defendant may have returned to Mexico for an unknown reason at some point and come back to the United States, Defendant's lack of more recent criminal history may be because of Defendant's lack of presence in the United States. As discussed above, because of the 2017 investigation, Defendant was asked to leave the residence he was in with his now-wife. It is not clear how long he was gone or where he went during that time.

7

Regardless, the fact that Defendant was deported just two years ago and has already returned to the country shows that he is not disposed to follow the orders of the Court or abide by the law; it shows a lack of respect for the law. *See Cobix-Espinoza*, 655 F.Supp.3d at 595 ("the nature of the [alleged] crime—returning to the United States, despite prior removal from this country by court order—indicates [Cobix-Espinoza] is not disposed to follow the orders of this Court"); *see also United States v. Figueroa-Alvarez,* 681 F. Supp. 3d 1131, 1144 (D. Idaho 2023) ("Multiple illegal reentries after removal demonstrate greater disrespect for court orders and the law" and are "predictive of non-appearance").

The Court also notes Defendant has the financial means to avoid prosecution if he wanted to do so. Despite the lack of a clear employment history, Defendant was able to go to Mexico and return to the country in a short period of time. He also has family and connections in other states and proffered that his wife is financially stable and able to support him and their family. Thus, given the potential penalties Defendant faces, he is likely more inclined to avoid prosecution now than he was in the past. *See Figuero-Alvarez*, 681 F. Supp. 3d at 1142 ("An alien defendant who has access to significant sums of money – from either his or her own bank accounts, or those of immediate family members, or cash – has a greater ability to flee.").

Here, considering the totality of the evidence, the Court finds the § 3142(g) factors weigh in favor of detention and does not find it can be reasonably assured

Defendant will not be a serious risk of flight if released.  *See id.* (identifying factors for consideration as including multiple illegal reentries, substance abuse, reliability and trustworthiness, incentive to flee, and ability to flee); *see also, Flores*, 794 F.3d at 1092 (noting factors to consider in an individualized determination of detention in an illegal reentry case include multiple unlawful entries into the United States, the severity of the potential punishment, and the weight of the evidence).

Accordingly, IT IS ORDERED Defendant be detained pending trial.

**DONE AND ORDERED** this 13th day of April, 2026.

s/ *Hope T Cannon*

Hope T. Cannon
United States Magistrate Judge

9